## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAULINA GUIROLA DE DAVID,<br>CORPORACION DE FIANZAS, CONFIANZA<br>S.A., CARLO MAURO-RHODIO GUZMAN,<br>JESUS ALBERTO QUIROA MONTEPEQUE,<br>ASESORES REGIONALES, S.A., DE C.V.,<br>CORPORACION DE INVERSIONES EN<br>OPCIONES Y FUTUROS, S.A., ESBA S.A.,<br>JOSE MIGUEL GAITAN ALVAREZ,<br>RICARDO RAMON MAZARIEGOS<br>CATELLANOS AND MARIA VIRGINIA<br>GAITAN DE MAZARIEGOS, JULIO<br>ROBERTO PINEDA AVILA, FRANCISCO<br>JAVIER PAZ PINEDA, JUAN FERNANDO<br>PEREZ MARROQUIN, DIDIER PATRICK<br>WURSTER, ALFREDO PRADANOS<br>VALDIZAN, ALBA MARIA MARLENNE<br>MEANY VALERIO DE HAGE AND NORMA<br>LISSETTE HERNANDEZ SANCHEZ,<br>SAMUEL ANTONIO CHARUCO<br>SAGASTUME, CORPORACION INTEGRAL<br>DE INVERSIONES, S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>ALARON TRADING CORPORATION d/b/a<br>ALARON LATIN AMERICA, ALBERTO<br>ALVAREZ, JOSE ("PEPE") ORTEGA,<br>ALBERTO TARAFA, yet undetermined<br>principals and yet undetermined persons,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>CIVIL ACTION NO. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, by and through their undersigned attorneys, complain of Defendants as follows:

## Summary of the Action

1)      This is an action for violations of the Commodity Exchange Act, 7 U.S.C. § 1 et seq. (the "Act" or "CEA") and the Regulations of the Commodity Futures Trading Commission, 17 C.F.R. § 1 et seq., promulgated thereunder, the Illinois Deceptive Business Practices Act 815 ILCS 505/1 et seq., Florida Securities and Investor Protection Act, F.S. 517.011 et seq. and common law claims based on losses suffered by Plaintiffs as the result of the intentional actions, misrepresentations and omissions of each of the Defendants, acting individually and/or collectively.

2)      Beginning in or about January 2005 and continuing until in or about August 2008, Defendants continuously engaged in, and fraudulently concealed from Plaintiffs, a futures and options trading scheme that was intended to, and did, defraud Plaintiffs of millions of dollars. Plaintiffs incorrectly, but reasonably believed, based on Defendants representations, that their money had been invested in a lawful enterprise. In fact the enterprise jointly promoted and run by the Alaron Trading Corporation defendants and Mercados de Futuros (MDF), Raul Alfonso Giron Galvez (Giron), its managing director, was a Ponzi scheme.

3)      At all times relevant to this Complaint, Defendants, acting in concert with MDF and Giron, made multiple, material misrepresentations and omissions; fraudulently solicited Plaintiffs to open accounts with Defendants and MDF allegedly to trade futures and options for investment purposes and then engaged in excessive trading of those

accounts and engaged in other misconduct in order to generate commissions and other fees for themselves and Defendants – without regard to the Plaintiffs' best interests.

4)   Defendants actively participated in, facilitated, and aided and abetted the misconduct of MDF and Giron, by, among other things, 1) misrepresenting in promotion and marketing events attended by unsophisticated investors, including Plaintiffs, the capabilities of MDF, the nature of MDF's trading program and the honesty, integrity and skill of MDF, its principal, and the Alaron Defendants; 2) omitting to advise Plaintiffs and others in its promotion and marketing efforts on behalf of MDF that MDF a) was not conducting a legitimate or lawful business, b) that its representations and promises to Plaintiffs - of which the Alaron Defendants were aware and sponsored - were fraudulent and misleading, and c) that MDF and the Alaron Defendants had set commissions to be paid by the Plaintiffs at levels that virtually insured the accounts could never be profitable; 3) providing incentives to MDF in order to encourage and aid and abet MDF in its unlawful trading activities, including churning of the accounts in order to generate excessive commissions in which both MDF and the Alaron Defendants shared; and 4) paying out monthly "profits" to Plaintiffs in order to fund bogus incentive fees claimed by MDF and Giron even though no profit was actually realized in Plaintiffs' accounts.

5)   Because Plaintiffs have not yet had the benefit of discovery, certain information regarding the actions and omissions by Defendants that was fraudulently concealed by the Defendants remains exclusively within Defendants' knowledge and possession. Accordingly, despite Plaintiffs' pre-suit investigation, certain allegations herein are made upon information and belief.

**PLAINTIFFS**

1.      Plaintiff, Paulina Guirola de David, is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala. At times relevant to this Complaint she maintained one or more accounts with Alaron.

2.      Plaintiff Corporacion de Fianzas, Confianza, S.A., ("CFC") is, and at all times relevant to this Complaint was, a business entity operating and existing under the laws of Guatemala with its principal place of business in Guatemala.  At times relevant to this Complaint CFC maintained one or more accounts with Alaron.

3.      Plaintiff Carlo Mauro-Rhodio Guzman is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala.  At times relevant to this Complaint he maintained one or more accounts with Alaron.

4.      Plaintiff Jesus Alberto Quiroa Montepeque is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala.  At times relevant to this Complaint he maintained one or more accounts with Alaron.

5.      Plaintiff Asesores Regionales, S.A. de C. V. ("ARCV") is, and at all times relevant to this Complaint was, a business entity operating and existing under the laws of El Salvador with its principal place of business in El Salvador. At times relevant to this Complaint ARCV maintained an account with Alaron.

6.      Plaintiff Corporacion de Inversiones en Opciones y Futuros, S.A.("CIOFSA"), is, and at all times relevant to this Complaint was, a business entity operating and existing under the laws of Panama with its principal place of business in Panama. At times relevant to this Complaint CIOFSA maintained one or more accounts with Alaron.

7.     Plaintiff ESBA S.A. ("ESBASA") is, and at all times relevant to this Complaint was, a business entity operating and existing under the laws of Guatemala with its principal place of business in Guatemala. At times relevant to this Complaint ESBASA maintained an account with Alaron.

8.     Plaintiffs Maria Virginia Gaitan de Mazariegos and Jose Miguel Gaitan Alvarez are father and daughter. They are, and at all times relevant to this Complaint were, citizens and residents of Guatemala. At times relevant to this Complaint they maintained a joint account with Alaron.

9.     Plaintiffs Ricardo Ramon Mazariegos Catellanos and Maria Virginia Gaitan de Mazareigos are husband and wife. They are, and at all times relevant to this Complaint were, citizens and residents of Guatemala. At times relevant to this Complaint they maintained a joint account with Alaron.

10.     Plaintiff Julio Roberto Pineda Avila is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala.  At times relevant to this Complaint he maintained an account with Alaron.

11.     Plaintiff Francisco Javier Paz Pineda is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala.  At times relevant to this Complaint he maintained an account with Alaron.

12.     Plaintiff Juan Fernando Perez Marroquin is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala.  At times relevant to this Complaint he maintained an account with Alaron.

5

13.     Plaintiff Didier Patrick Wurster is, and at all times relevant to this Complaint was, a citizen of Switzerland and a resident of Guatemala.  At times relevant to this Complaint he maintained an account with Alaron.

14.     Plaintiff Alfredo Pradanos Valdizan is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala.  At times relevant to this Complaint he maintained an account with Alaron.

15.     Plaintiffs Alba Maria Marlenne Meany Valerio de Hage and Norma Lissette Hernandez Sanchez are, and at all times relevant to this Complaint were, citizens and residents of Guatemala.  At times relevant to this Complaint they maintained an account with Alaron.

16.     Plaintiff Samuel Antonio Charuco Sagastume is, and at all times relevant to this Complaint was, a citizen and resident of Guatemala.  At times relevant to this Complaint he maintained an account with Alaron.

17.     Plaintiff Corporacion Integral de Inversiones, S.A. ("CII") is, and at all times relevant to this Complaint was, a business entity operating and existing under the laws of, and with its principal place of business in, Guatemala.  At times relevant to this Complaint CII maintained an account with Alaron.


**DEFENDANTS**

18.     At all times relevant to the Complaint, Defendant Alaron Trading Corporation ("Alaron") was an Illinois corporation with its principal place of business at 822 W. Washington Blvd., Chicago, IL 60607.  Alaron was registered with the Commodity Futures Trading Commission (CFTC) as a futures commission merchant ("FCM").  In its

6

Defendant Alaron. Together with Alaron LA and the other Defendants, MDF and Giron induced Plaintiffs and other investors from Guatemala and other Central American countries to open Alaron accounts to be directed by MDF and Giron. Giron was MDF's Chief Executive Office (CEO) and head trader. Giron is currently incarcerated in Guatemala for his participation in the activities described herein.

## Jurisdiction and Venue

24.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, in that the acts alleged in this Complaint state a cause of action under the Commodity Exchange Act, 7 U.S.C. § 1 et seq; and 28 U.S.C. § 1332, in that, Plaintiffs are, and at all times relevant were, citizens and residents of foreign countries, and Defendants are citizens and residents of either Illinois or Florida.

25.    The Court has supplemental subject matter jurisdiction over the state law claims herein pursuant to 28 U.S.C. § 1367.

26.    The amount in controversy as to each Plaintiff exceeds $75,000.00.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## Factual Allegations

Defendants Business Relationship with MDF

28.    MDF was a company based in Guatemala City, Guatemala and owned and controlled by Giron. At all times relevant to this Complaint Giron was acting within the scope of his employment with MDF.

29.     Upon information and belief at all times relevant to this Complaint MDF and Giron introduced customer accounts exclusively to Alaron. MDF and Alaron shared the compensation paid by the customers, including Plaintiffs, derived from the unlawful activities described below. At all times relevant to this Complaint Giron and MDF were agents of Alaron acting within the scope of their agency.

30.     With the active assistance and participation of Alaron LA, and the individual Defendants, Giron and MDF, acting as agents of Alaron, fraudulently solicited customers in Latin America to trade commodity futures and options through Alaron.

31.     Beginning in or about June 2004, Defendants met with Giron to discuss the possibility of MDF becoming an FIB of Alaron. As a consequence of that and subsequent meetings, at all times relevant to this Complaint Defendants knew that MDF's solicitations of investors included 1) a guarantee against loss of principal;  2) a guaranteed minimum rate of return on funds; and 3) misrepresentations relating to the skill, experience and success of the trading by Giron. Defendants also knew through meetings with Giron as well as reviews of MDF's trading activity that MDF's guarantees were false and misleading in that Giron and MDF never intended to, nor could, deliver on those guarantees. Further, Defendants soon learned that claims relating to the trading skill, expertise and success of Giron and MDF were also false.

32.     Despite knowledge of those and other misrepresentations of MDF and Giron, Defendants agreed to take MDF on as an FIB and agent of Alaron. Defendants originally contemplated charging a commission rate of $35 per round turn contract (i.e. a purchase and sale of one futures contract), more than double the going rate. Realizing the Plaintiffs and other Latin American clients were unsophisticated with respect to trading

of commodity futures and options and would not realize that they were being overcharged, Defendants and MDF agreed to charge the clients $42 per round turn contract, almost three times the going rate. Defendants and MDF shared the grossly inflated commissions charged to Plaintiffs and other investors.

33.     Defendants knew that at a commission rate of $42 per round turn it was improbable for actively traded accounts, as were Plaintiffs' accounts, to be traded profitably. At no time, however, did Defendants advise Plaintiffs of this material fact, despite multiple occasions in Guatemala and Miami when it could have done so.

Joint Defendant-MDF Marketing Effort

34.     As part of the strategy to solicit and induce prospective Latin American investors, including Plaintiffs, to open accounts with Alaron, MDF and Defendants embarked upon a joint marketing effort. In connection with that effort, Tarafa, upon information and belief, with the knowledge and agreement of the other Defendants, regularly travelled to Guatemala and other Latin American countries to participate in promotion and marketing events with Giron and MDF, communicated with MDF and Giron through telephonic or electronic mail communications or other instrumentalities of interstate commerce and solicited and induced potential investors to open accounts with Alaron and MDF. During those meetings, including meetings attended by Plaintiffs Guirola de David, CFC, through its agent, Mauro-Rhodio, ARCV, through its agent, CIOF, through its agent, ESBA, through its agent, Gaitan, de Mazariegos and Gaitan, Pineda, Perez, and CII, through its agent, Tarafa represented that a) Giron was one of the five best and highly profitable traders in South America; b) Alaron was very selective in

its choice of FIB traders and would only work with the best; and c) Alaron had great confidence in Giron's skill and expertise and was fully supportive of MDF personnel. Tarafa's representations were also communicated to Plaintiffs Catellanos, Avila, Marroquin, Valdizan, Sagastume, Montepeque, Wurster, Meany and Sanchez through those Plaintiffs who attended the meetings. These representations were false and known to be false at the time they were made.

35.     At no time in these meetings or otherwise did Tarafa or any of the other Defendants advise Plaintiffs or other potential investors that in fact Giron and MDF were 1) regularly and consistently losing money for their clients; 2) had neither the capacity, the skill and experience, nor the intention to satisfy any of the guarantees made to Plaintiffs in soliciting their accounts; 3) were falsely advising Plaintiffs that their accounts were profitable, demanding and receiving incentive fees on profits that did not exist; or 4) concealing the losses in the accounts through an options scheme more fully described below.

36.     Defendants also sponsored events for MDF introduced investors at Defendants' U.S. offices in Miami, Florida. These investors traveled from Central America to Miami to attend Defendants' lectures and to meet with Defendants in order to ask Defendants questions about the futures markets. During those meetings, Tarafa was often joined by Alvarez and Ortega who either reiterated or sat silent as Tarafa made virtually identical representations as those made by Tarafa in Guatemala or other Latin American venues. Still they failed to disclose the facts reflected in paragraph 35 above.

37.     The purpose of the representations and omissions by Defendants was to induce Plaintiffs and others to open trading accounts with Alaron that would be traded by

Alaron's agents, MDF and Giron, on a discretionary basis. Reasonably relying on those misrepresentations and omissions by Defendants, each of the Plaintiffs opened one or more accounts with Alaron and gave power of attorney to MDF and Giron to trade those accounts on a discretionary basis. Account documentation was executed by Plaintiffs and forwarded to Defendants through the mails and/or other instrumentalities of interstate commerce.

38.     Further, Defendants knew and intended that the misrepresentations and other fraudulent conduct of Defendants and Giron and MDF in these meetings would be communicated to and relied upon by, other potential – and ultimately actual – clients.

39.     As each of the accounts opened by Plaintiffs was to be traded by Alaron's agents, MDF and Giron on a discretionary basis, Plaintiffs had a fiduciary relationship with Defendants, MDF and Giron and each of the Defendants owed a duty of utmost loyalty to Plaintiffs. As described more fully herein, Defendants ignored their duty of loyalty and breached their fiduciary obligations. Instead, they traded Plaintiffs' accounts for the sole benefit of themselves, MDF and Giron.


Excessive Trading and Commission Sharing Arrangement

40.     All trading in the Plaintiffs' accounts with Alaron was conducted on a discretionary basis by MDF and Giron. Plaintiffs did not place orders for their accounts. All trading was conducted on designated contract markets registered with the CFTC.

41.     The accounts of each of the Plaintiffs were charged $42.00 per round turn trade. Thus, for example, on a purchase and sale of 10 futures contracts the account would be

charged $420. One half of this amount was paid to Alaron. This commission was almost three times the customary amount charged for individual futures accounts.

42. In order to increase trading in the accounts, Defendants gave MDF a monetary incentive. Upon information and belief, Defendants agreed to reduce their fees by $1.00 for every additional one-thousand turns generated per month. For example, for the first one-thousand turns in one month, Defendants charged MDF $21.00 per turn. For the second one-thousand turns in the same month, Defendants charged MDF $20.00 per turn. For the third one-thousand turns in that month, Defendants charged MDF $19.00 per turn.

43. Grabbing on to this incentive, MDF and Giron accelerated the size and turnover rate of its trading on behalf of Plaintiffs and others with total disregard of their best interests. Upon information and belief, after Defendants introduced this incentive Defendants' business with MDF grew from one-thousand (1,000) turns per month to four-thousand (4,000) turns per month.

44. At no time during this increase in the velocity and scale of trading did any account of the Plaintiffs realize a profit. Nonetheless, MDF and Giron, encouraged and assisted by Alaron LA, continued to trade in ever increasing volumes for the sole purpose of generating commission income. Defendants were aware of and participated in this activity, but at no time advised Plaintiffs of this misconduct.

Defendants Concealed Trading Losses from Plaintiffs

45. As required by CFTC regulations Defendants sent monthly account statements to Plaintiffs through the mails or other instrumentalities of interstate commerce. The "account liquidating balance" or "net liquidity" portion of the monthly statements

reflected the true value in the account, i.e. the profit/loss that would be payable if all open positions in the account were closed at the days settlement price (i.e. the price set by the exchange as the value of the contract at the end of the day) and the account was reduced to cash. The monthly statements also reflected an amount designated "cash value". This amount reflected the amount of cash that was on deposit in the account without regard to any open positions against which the cash value was being held.

46.     For example, in simple terms, a trader could sell a put option (entitling the buyer at its election to receive a short futures contract from the seller at a specified price, the strike price). A short futures position loses value as the price of the underlying commodity increases. Likewise, the short put option position loses value. Thus, if the extent of the loss in the future position exceeds the amount of the premium received on the sale of the put, the transaction results in a loss to the trader. These mark-to-market losses (i.e. unrealized declines in value of the account's positions) are not reflected in the "cash value". The "cash value" reflected cash in the account plus the sum of cash received on the sale of a put or call option, but NOT the amount of the mark-to-market loss that would reduce that value when the option was bought back. The mark to market loss would be reflected in the liquidation value of the account.

47.     In the course of their trading on behalf of Plaintiffs, MDF and Giron aggressively traded and consistently lost money - primarily in Euro dollar and West Texas Intermediate (WTI) crude futures contracts.

48.     In order to conceal those losses, MDF and Giron sold deep in the money puts or calls, i.e. options with high cash value but significant ongoing risk. These options generated "cash value" for Plaintiffs but not realized profits. The value brought into the

account through MDF's options trading, was not yet earned and remained at risk and eventually led to additional losses in the Plaintiffs' accounts.

49.     MDF's options trading scheme, thus, artificially and misleadingly increased the "cash value" reflected in the monthly statement, while the net liquidating value of the account was sharply reduced as a consequence of the high risk of the positions and the additional commissions being charged for those transactions.

50.     MDF and Giron told Defendants' customers that the realized profit of their account was reflected in the "cash value" portion of the account statements.  They told customers that the "net liquidity" portion of the statement was not relevant and should be ignored.

51.     MDF also provided its own monthly statement to customers.  The alleged profits reported in MDF's monthly statements, purporting to reflect the account status as of the middle of the month, were intentionally misleading and deceitful.  Defendants were aware of these material misrepresentations by MDF and Giron, but at no time advised Plaintiffs, even during their regular presentations to clients and prospective customers.

52.     To further conceal the ongoing and growing losses in Plaintiffs' accounts and to facilitate incentive fee payments to MDF to which it was not entitled each month, MDF and Giron sent separate customer statements, created by MDF that reported false profits to Plaintiffs.  MDF would then request Alaron to transfer sufficient funds from Plaintiffs' accounts into accounts at a local Miami bank that Giron and MDF had insisted Plaintiffs open.  Although this procedure was contrary to industry practice and Defendants knew the accounts were not profitable, they nonetheless prepared and cut checks for this

illusory profit. Not realizing that the accounts were not profitable or that this process was irregular, Plaintiffs thereafter paid the "incentive fee" on the phantom profits to MDF.

53.     As a consequence of the fraudulent scheme of Defendants, MDF and Giron, each of the Plaintiffs was injured in an amount greater than $75,000 and aggregate losses to Plaintiffs from Defendants unlawful and malicious conduct exceeded $11 million.

54.     Plaintiffs did not discover and in the exercise of reasonable diligence could not have discovered the Defendants' scheme until August 2008 when the MDF offices were finally shut down as the result of media reports that the Guatemalan government was conducting a criminal investigation into MDF's trading activities.

**COUNT ONE**

**COMMODITY EXCHANGE ACT FRAUD (7 U.S.C.§ 6b)**

55.     The allegations of paragraphs 1 - 54 are incorporated herein by reference as though fully set forth.

56.     The representations, omissions and other actions of defendants set forth above were made in connection with orders to make, and the making of, contracts of sale of commodities in interstate commerce or for future delivery made on or subject to the rules of a designated contract markets including the New York Mercantile Exchange, Chicago Mercantile Exchange and the Chicago Board of Trade.

57.     In violation of Section 4b of the Act, the representations, omissions and other misconduct of defendants described above were intended to, and in fact did, cheat and defraud and deceive Plaintiffs into opening and maintaining accounts for the trading of

futures and options on futures with Alaron that were traded by Giron and MDF to the detriment of Plaintiffs.

58.     Plaintiffs justifiably relied on the representations and omissions of Defendants. As a direct and proximate result of Defendants' misconduct Plaintiff's were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.


## COUNT TWO

## COMMODITY EXCHANGE ACT OPTIONS FRAUD, (7 U.S.C. 6c(b))

59.     The allegations of paragraphs 1 - 58 are incorporated herein by reference as though fully set forth.

60.     Section 4c(b) of the CEA makes it unlawful to offer to enter into, enter into, or confirm the execution of any transaction involving any commodity regulated under the CEA, which is of the character or commonly known to the trade as an option, contrary to any rule, regulation or order of the CFTC.

61.     CFTC Regulation 32.9, makes it unlawful for any person directly or indirectly (a) to cheat or defraud or attempt to cheat or defraud any other person; (b) to make or cause to be made to any other person any false report or statement; or (c) to deceive or attempt to deceive any other person by any means whatsoever, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction.

62.     In violation of Section 4c(b) of the CEA the representations, omissions and other misconduct of Defendants described above with respect to options transactions were intended to, and in fact did, cheat and defraud and deceive Plaintiffs into opening and

maintaining accounts with Alaron that were traded by Giron and MFD to the detriment of Plaintiffs.

63.     Plaintiffs justifiably relied on the representations and omissions of Defendants. As a direct and proximate result of Defendants' misconduct Plaintiff's were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.

## COUNT THREE

## PRINCIPAL LIABILITY (7 U.S.C. § 2(a)(1)(B))

64.     The allegations of Paragraphs 1 - 63 are incorporated herein by reference as though fully set forth.

65.     Defendants, and as yet unidentified, principals, if any as designated in CEA 7 U.S.C. § 2(a)(1)(B), are liable to the Plaintiffs for their employees' acts, omissions, or failures designated in Counts One and Two above.

66.     As a result of these actions, Plaintiffs were damaged by the loss of value of their accounts together with the commissions and associated fees paid to Defendants, in a total of at least $11,000,000.00.

## COUNT FOUR

## AIDING AND ABETTING VIOLATIONS OF THE CEA

## (7 U.S.C. §23(a)(1)(A – C))

67.     The allegations of paragraphs 1 – 66 are incorporated herein by reference as though fully set forth.

68.   The misrepresentations, omissions and other misconduct of defendants described above with respect to futures and options transactions violated Section 4b and Section 4 c(b) of the CEA.

69.   In connection with those acts Plaintiffs a) received trading advice for a fee from Giron and MDF; b) had futures contracts and options on futures contracts executed for their account by Defendants at the direction of MDF and Giron; and c) deposited funds in connection with such futures contracts and options on futures contracts.

70.   Defendants were aware and participated in the unlawful misrepresentations and omissions of material information and of other misconduct of MDF and Giron and the violations of the CEA, shared in the intent of MDF and Giron to cheat and defraud Plaintiffs and substantially and unlawfully aided and abetted those violations by various means including but not limited to making independent misrepresentations of material fact regarding the trading expertise of Giron and MDF.

71.   As a direct and proximate result of Defendants' misconduct Plaintiff's were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.

## COUNT FIVE

### VIOLATIONS OF ILLINOIS LAW

**Illinois Consumer Fraud and Deceptive Business Practice Act**

**(815 ILCS 505/1 et seq.)**

72.   The allegations of paragraphs 1 - 71 are incorporated herein by reference as though fully set forth.

73.    At all relevant times the principal place of business of Defendant Alaron was located in Chicago, Illinois.  Alaron LA at all times relevant to this Complaint was a branch office of Alaron.  Alvarez, Ortega and Tarafa were at all times relevant to this action doing business in Chicago through Alaron LA.

74.    The representations, omissions and other misconduct of Defendants described above were made in connection with orders to make, and the making of, contracts of sale of commodities in interstate commerce.

75.    The representations, omissions and other misconduct of Defendants described above were intended to, and in fact did, cheat and defraud and deceive Plaintiffs in violation of the Illinois Consumer Fraud and Deceptive Trade Practice Act, 815 ILCS 505/1 et. seq.

76.    Plaintiffs justifiably relied on the representations and omissions of Defendants.

77.    As a direct and proximate result of Defendants' actions Plaintiffs' were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.


## COUNT SIX

### VIOLATIONS OF FLORIDA LAW

#### Florida Securities and Investor Protection Act

#### (F.S. 517.011 et seq.)

78.    Paragraphs 1– 77 above are re-alleged and incorporated herein by reference as if fully restated herein.

79.    Defendants, by entering upon the courses of actions outlined above, violated F.S. 517.275 and therein, F.S. 517.301, in connection with the purchase and sale of a

commodity, commodity futures and/or commodity option which act or practice constitutes a violation of provisions of the CEA, including the rules and regulations promulgated there under or of an investment security, including (exempted securities and securities transaction), in that Defendants:

    a.   employed devices, schemes, or artifices to defraud the Plaintiffs,

    b.   obtained money or property from the Plaintiffs by means of untrue statements of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c.   engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon the Plaintiffs.

80.    At all relevant times the principal place of business of Defendant Alaron LA was located in Miami, Florida, from where Defendants Alvarez, Ortega and Tarafa conducted their business, subject to directions from the Defendant Alaron's Chicago office.

81.    The representations, omissions and other misconduct of Defendants described above were made in connection with orders to make, and the making of, contracts of sale of commodities in interstate commerce.

## COUNT SEVEN

## COMMON LAW FRAUD

82.    The allegations of paragraphs 1 - 81 are incorporated herein by reference as though fully set forth.

83.     As set forth above, Defendants made materially false statements and omissions of fact to Plaintiffs.

84.     Defendants knew that such statements and omissions were false and intended for their false statements to induce Plaintiffs to open and maintain accounts with Alaron that were then used by Defendants, Giron and MDF to defraud Plaintiffs through various means.

85.     The Plaintiffs justifiably relied on the representations and omissions of Defendants.

86.     As a direct and proximate result of Defendants' misconduct Plaintiff's were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.

87.     The misrepresentation, omissions and other unlawful actions of Defendants were intentional, malicious and willful.  Plaintiffs, therefore, are entitled to an award of punitive damages in an amount to be determined at trial.


## COUNT EIGHT

### CONSPIRACY TO DEFRAUD

88.     The allegations of paragraphs 1 - 87 are incorporated herein by reference as though fully set forth.

89.     Commencing in and around January 2005 and continuing throughout the relevant period, Defendants in Chicago, Illinois and Miami, Florida, and MDF and Giron and each of them, contrived maliciously, unlawfully, and wrongfully to cheat, deceive and defraud

Plaintiffs as set forth above and engage in or facilitate excessive and unauthorized trading in Plaintiffs' accounts for their mutual benefit.

90.    During this time, pursuant to the conspiracy and in furtherance of the design and purposes thereof, Defendants, Giron and MDF made materially false statements and omissions, excessively traded in Plaintiffs' accounts, received commissions and other fees from such trades, paid out false "profits" to Plaintiffs and facilitated and encouraged MDF's misconduct, in addition to other actions as set forth above.

91.    Because of the conspiracy among and between Defendants, Giron and MDF, and the overt acts of the Defendants and their co-conspirator, MDF, pursuant to the conspiracy and in furtherance of the design and purpose of it, Plaintiffs were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.

92.    The misrepresentation, omissions and other unlawful actions of Defendants were intentional, malicious and willful.  Plaintiffs, therefore, are entitled to an award of punitive damages in an amount to be determined at trial.

## COUNT NINE

### BREACH OF FIDUCIARY DUTY

93.    The allegations of paragraphs 1 – 92 are incorporated herein by reference as though fully set forth.

94.    By opening trading accounts with Defendants and transferring funds into those accounts, Plaintiffs confided and trusted in Defendants to handle and monitor their accounts according to applicable law, and to ensure that trading in those accounts occurred lawfully and as represented by Defendants, Giron and MDF.

95.    The handling of Plaintiffs' accounts by Defendants, Giron and MDF showed complete indifference to, and conscious disregard for, the best interest of Plaintiffs, and was in reckless disregard of Plaintiffs' rights with full realization of the probable results.

96.    As a direct and proximate result of Defendants' breach of fiduciary duty Plaintiffs were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.

97.    The misrepresentation, omissions and other unlawful actions of Defendants were intentional, malicious and willful.  Plaintiffs, therefore, are entitled to an award of punitive damages in an amount to be determined at trial.


**COUNT TEN**

**NEGLIGENT SUPERVISION**

98.    The allegations of paragraphs 1 – 97 are incorporated herein by reference as though fully set forth.

99.    At all relevant times to this Complaint, Alaron LA and its employees, including Alvarez, Tarafa and Ortega, operated under the direct supervision of Alaron. Based on Alaron's business relationship with Alaron LA and Alaron's employer/employee relationship with Alvarez, Ortega and Tarafa, as set forth above, Alaron knew or had reason to know that Plaintiffs would be subjected to an unreasonable risk of harm by allowing Alaron LA and Alvarez, Ortega and Tarafa to manage Plaintiffs accounts. Likewise, Alaron had reason to know Alvarez, Ortega and Tarafa were unfit and untrustworthy to manage Plaintiffs' accounts.

24

100.    Defendant Alaron owed a duty to Plaintiffs to establish, maintain, and enforce a system of supervision over their branch offices and employees, to ensure that trading in Plaintiff's accounts proceeded consistent with the law.

101.    During the relevant time period, Defendant Alaron breached that duty to Plaintiffs in that they failed to establish, maintain and enforce a system of supervision over their branch office, Alaron LA, and employees, Alvarez, Ortega and Tarafa, so as to prevent fraudulent behavior and excessive trading in Plaintiffs' accounts.

102.    As a direct and proximate result of Defendant Alaron's failure to properly supervise their branch office, Alaron LA, and employees, Alvarez, Ortega and Tarafa, Plaintiffs were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.

103.    The misrepresentation, omissions and other unlawful actions of Defendants were intentional, malicious and willful.  Plaintiffs, therefore, are entitled to an award of punitive damages in an amount to be determined at trial.


## COUNT ELEVEN

### FRAUDULENT CONCEALMENT

104.    The allegations of paragraphs 1 - 103 are incorporated herein by reference as though fully set forth.

105.    Defendants, Giron and MDF, as set forth above, concealed material facts from Plaintiffs, and Defendants had a duty to disclose these facts to Plaintiffs.

106.    In order to conceal these material facts, Defendants and MDF, acting through Giron, made materially false statements and omissions of facts to Plaintiffs.

107. Defendants and MDF knew that such statements and omissions were false and intended for their false statements to induce Plaintiffs to open and maintain accounts with Alaron that were then used by Defendants, Giron and MDF to defraud Plaintiffs through various means.

108. Plaintiffs neither knew, nor could have known of Defendants' misconduct until late August 2008.

109. The Plaintiffs justifiably relied upon the representations and omissions of Defendants.

110. As a direct and proximate result of Defendants' misconduct Plaintiffs were injured in an amount to be determined at trial but in the aggregate not less than $11,000,000.00.

111. The misrepresentation, omissions and other unlawful actions of Defendants were intentional, malicious and willful. Plaintiffs, therefore, are entitled to an award of punitive damages in an amount to be determined at trial.

## COUNT TWELVE

### UNJUST ENRICHMENT

112. The allegations of paragraphs 1 - 111 are incorporated herein by reference as though fully set forth.

113. As set forth above, Plaintiffs were deceived by multiple fraudulent misrepresentations and omissions by Defendants and MDF.

114. As a result of Defendants and MDF's fraudulent misrepresentations and omissions, Plaintiffs conferred a benefit on Defendants by investing in excess of $11,000,000 in accounts with Defendant. Defendants further benefitted from the

commissions and fees charged to Plaintiffs' accounts, as a result of the Defendants' FIB, MDF (trading in Plaintiffs' accounts), which Defendants retained.

115.    Under the circumstances set forth above, it would be unjust for Defendants to retain the benefits conferred upon them by Plaintiffs, and Defendants' retention of such benefits would violate fundamental principles of justice, equity and good conscience.

116.    As a direct and proximate result of Defendants' actions and those of MDF, Plaintiffs were injured in an amount to be proved at trial but in the aggregate not less than $11,000,000.00.

117.    The misrepresentation, omissions and other unlawful actions of Defendants were intentional, malicious and willful.  Plaintiffs, therefore, are entitled to an award of punitive damages in an amount to be determined at trial.


### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

1)  Award Plaintiffs compensatory damages in an amount to be proved at trial;

2)  Award Plaintiffs punitive damages in an amount to be proved at trial;

3)  Award Plaintiffs reasonable attorneys' fees and costs; and

4)  Grant such further relief as this court deems just and proper.

DEWEY & LEBOEUF LLP


/s/ Timothy J. Carey_____
Timothy J. Carey
Joanna Collias
Two Prudential Plaza
180 N. Stetson Avenue, Suite 3700
Chicago, Illinois 60601
(312) 794-8000 (phone)
(312) 794-6550 (fax)
tcarey@dl.com
jcollias@dl.com

Attorneys for Plaintiffs

Dated: June 8, 2010

.