IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAULINA GUIROLA DE DAVID,                          )
CORPORACION DE FIANZAS, CONFIANZA                  )
S.A., CARLO MAURO-RHODIO GUZMAN,                   )
JESUS ALBERTO QUIROA MONTEPEQUE                    )
ASESORES REGIONALES, S.A., DE C.V.,                )
CORPORACION DE INVERSIONES EN                      )     No.  10 CV 3502
OPCIONES Y FUTUROS, S.A., ESBA S.A.,               )
JOSE MIGUEL GAITAN ALVAREZ,                        )     Judge Robert W. Gettleman
RICARDO RAMON MAZARIEGOS                           )
CATELLANOS AND MARIA VIRGINIA                      )
GAITAN DE MAZARIEGOS, JULIO                        )
ROBERTO PINEDA AVILA, FRANCISCO                    )
JAVIER PAZ PINEDA, JUAN FERNANDO                   )
PEREZ MARROQUIN, DIDIER PATRICK                    )
WURSTER, ALFREDO PRADANOS                          )
VALDIZAN, ALBA MARIA MARLENNE                      )
MEANY VALERIO DE HAGE AND NORMA                    )
LISSETTE HERNANDEZ SANCHEZ,                        )
SAMUEL ANTONIO CHARUCO                             )
SAGASTUME, CORPORACION INTEGRAL                    )
DE INVERSIONES, S.A.,                              )
                                                   )
                Plaintiffs,                        )
        v.                                         )
                                                   )
ALARON TRADING CORPORATION d/b/a                   )
ALARON LATIN AMERICA, ALBERTO                      )
ALVAREZ, JOSE ("PEPE") ORTEGA,                     )
ALBERTO TARAFA, yet undetermined                   )
principals and yet undetermined persons,           )
                                                   )
                Defendants.                        )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, twenty foreign corporations and individuals, have filed a twelve-count

amended complaint against defendants Alaron Trading Corporation ("Alaron") and its d/b/a

Alaron Latin America ("Alaron LA"), along with three of Alaron LA's managers and employees,

Alberto Alvarez, Jose "Pepe" Ortega, and Alberto Tarafa.  The complaint alleges four counts

under the Commodity Exchange Act ("CEA"),[1] in addition to various pendent state-law claims.[2]

Defendant Alaron, joined by pro se defendants Alvarez, Ortega, and Tarafa, has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Alvarez has filed an additional pro se reply to plaintiffs' response to defendant Alaron's motion to dismiss, presenting further arguments in support of defendant Alaron's motion to dismiss as it pertains to him. Defendant Ortega has moved to dismiss the complaint for lack of personal jurisdiction and improper venue, pursuant to Rules 12(b)(2) and (b)(3). For the following reasons, defendant Alaron's motion, joined by pro se defendants Alvarez, Ortega, and Tarafa, and supplemented by defendant Alvarez, is denied in part and granted in part. Defendant Ortega's motion to dismiss is denied.

## BACKGROUND[3]

Defendant Alaron is a Chicago-based futures commissions merchant ("FCM")[4] registered with the Commodity Futures Trading Commission ("CFTC"). Defendant Alaron LA, located in Miami, Florida, is a d/b/a and branch office of defendant Alaron. The individual defendants, all

---

[1] Commodity Fraud (Count I); Commodity Options Fraud (Count II); Principal Liability for Counts I and II (Count III); and Aiding and Abetting Commodity Fraud (Count IV).

[2] Violation of Illinois Consumer Fraud Act (Count V); Violation of Florida Securities Law Through Fraud (Count VI); Common Law Fraud (Count VII); Conspiracy to Defraud (Count VIII); Breach of Fiduciary Duty (Count IX); Negligent Supervision (Count X); Fraudulent Concealment (Count XI); and Unjust Enrichment (Count XII).

[3] For purposes of a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 847 (7th Cir. 2008).

[4] An FCM is an "individual, association, partnership, corporation or trust" that is "engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market . . . ." 7 U.S.C. § 1(a)(20)(a).

citizens and residents of Florida, were employees and managers of defendant Alaron LA: defendant Alberto Alvarez was its branch manager; defendant Jose "Pepe" Ortega was responsible for accounting and finance; and defendant Alberto Tarafa was the Latin American sales representative. Plaintiffs are foreign individuals and corporations who maintained accounts with defendant Alaron.

From January 2005 through August 2008, defendants allegedly operated a futures and options Ponzi scheme, along with defendant Alaron's Guatemala-based foreign introducing broker, Mercados de Futuros ("MDF"), and MDF's CEO and head trader, Raul Alfonso Giron Galves ("Giron").[5] In the second half of 2004, defendants Alvarez, Ortega, and Tarafa held a number of meetings with Giron to discuss the possibility of MDF's working as a foreign introducing broker for defendant Alaron. Through these meetings, and through reviews of MDF's trading activity, defendants learned that MDF planned to solicit investors for defendant Alaron by guaranteeing that investors would not lose any of their principal, and moreover that investors would earn a specified rate of return on investments. Defendants knew that because MDF could not, and did not intend to, deliver on these guarantees, the guarantees were deceitful; they also knew that the purpose of the guarantees was to induce plaintiffs' reliance on them. Defendants also learned that Giron and MDF planned to misrepresent their skill, experience, and expertise to investors.

Despite this knowledge, defendant Alaron agreed to take on MDF as a foreign introducing broker and agent. As the years passed, and MDF never produced a profit in these

---

[5] Giron is currently incarcerated in Guatemala for his participation in this scheme.

accounts, defendants continued to work with MDF to solicit and trade new accounts with the same deceitful guarantees. Defendants and MDF intentionally hid from plaintiffs the fact that the trading accounts were not making profits. Further, after plaintiffs opened their accounts, defendants engaged in excessive trading in them and charged unreasonable fees and commissions. Defendants and MDF shared the profits from the inflated commissions.

Defendants, along with MDF and Giron, undertook three strategies to propagate and support their scheme: 1) a joint marketing effort; 2) an excessive trading and commission sharing agreement; and 3) concealing trading losses from plaintiffs.

## A.    Joint Market Effort

MDF and defendant Alaron jointly solicited plaintiffs at various conference presentations, both abroad and in Miami. Defendant Tarafa, with the knowledge and agreement of the other defendants, regularly traveled to Guatemala and other Latin American countries to participate in promotion and marketing events with MDF and Giron. At these events, defendant Tarafa falsely assured plaintiffs that defendant Alaron worked with only the very best trading advisors, and that Giron was one of the five best trading advisors in Latin America. Defendants also sponsored events for investors at defendant Alaron LA's office in Miami, at which defendant Tarafa, often joined by defendants Alvarez and Ortega, made the same fraudulent representations. In reasonable reliance on defendants' omissions and misrepresentations, plaintiffs opened accounts with defendant Alaron and gave MDF and Giron power of attorney to trade on a discretionary basis.

## B.    Excessive Trading and Commission Sharing Agreement

MDF and Giron conducted all trading in plaintiffs' Alaron accounts on a discretionary basis. Defendants agreed with MDF to charge plaintiffs a grossly inflated commission of $42 per round turn contract (i.e., a purchase and sale of one futures contract)—almost three times the standard rate. Defendant Alaron received half of the commission fees.

Further, defendants encouraged MDF to increase trading in plaintiffs' accounts by providing MDF with a monetary incentive: defendants agreed to reduced their fees by $1.00 for every additional 1,000 turns per month. After defendants introduced this incentive, their business with MDF grew from 1,000 to 4,000 turns per month. Defendants knew that plaintiffs' accounts were not realizing profits, but still encouraged MDF and Giron to increase trading.

## C.     Concealing Trading Losses from Plaintiffs

In the course of trading on plaintiffs' behalf, MDF and Giron aggressively traded and consistently lost money. To conceal the losses, they misleadingly increased the "cash value" in plaintiffs' accounts by selling options with high cash value but significant ongoing risk. This increased risk, in addition to the additional commissions charged for the transactions, sharply reduced the net liquidating value of plaintiffs' accounts. MDF and Giron then improperly instructed plaintiffs on how to interpret the monthly account statements defendant Alaron sent to plaintiffs. MDF and Giron informed plaintiffs that the "cash value" indicated realized profit, and instructed plaintiffs to ignore the "net liquidity" portion. In fact, "net liquidity" reflected the account's true value, whereas "cash value" reflected the amount of cash on deposit in the account and did not account for any open positions against which the cash value was being held.

Defendants knew that, as an additional measure to conceal the losses in plaintiffs' accounts, and to facilitate monthly incentive payments to MDF, MDF provided fraudulent

monthly statements to customers. Defendants Alvarez and Ortega arranged to have the illusory profits taken from plaintiffs' accounts and transferred to a third-party Miami bank account that Giron and MDF instructed plaintiffs to open. Plaintiffs paid MDF incentive fees based on these illusory profits.

Plaintiffs discovered the scheme in August 2008, when MDF shut down amid media reports that the Guatemalan government was conducting a criminal investigation into MDF's trading activities.

## DISCUSSION

## I. Defendant Alaron's Motion to Dismiss

Defendant Alaron, whose motion is joined by pro se defendants Alvarez, Ortega, and Tarafa, has moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6), because: (1) plaintiffs' allegations of fraud (Counts I-VIII, XI) fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standards; (2) plaintiffs have failed to allege that defendant Alaron owed them a fiduciary duty, and therefore cannot state a claim for breach of fiduciary duty (Count IX); (3) plaintiffs' allegation of failure to supervise is conclusory (Count X); and (4) plaintiffs have failed to properly allege unjust enrichment (Count XII). Because the complaint fails to meet Rule 9(b)'s standards, the motion is granted as to Counts I-VIII and XI. The motion is denied as to Counts IX, X, and XII.

## A. Legal Standards

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court considers all well-pleaded allegations in the complaint as true and draws all inferences in the light most favorable to the plaintiff. Sprint Spectrum L.P v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The purpose of such a motion is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The complaint must describe the claim in sufficient detail to give a defendant fair notice of what the claim is and the grounds on which it rests. The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The plaintiff must give enough details about the subject matter of the case to present a story that holds together. The court then asks "itself could these things have happened, not did they happen." Swanson v. Citibank N.A., 614 F.3d 400, 404 (7th Cir. 2010).

Additionally, because plaintiffs asserts various fraud-related claims, Counts I-VIII and XI are subject to the heightened pleading standards of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As used in Rule 9(b), "circumstances" means the "who, what, where, when, and how" of the alleged fraud. Uni*quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) ("the plaintiff [must] state the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff") (internal quotation omitted). In a multiple-defendant case, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Vicom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 778 (7th Cir. 1994) (citation

omitted); see also Zic v. Italian Gov't Travel Office, 149 F. Supp. 2d 473, 477 (N.D. Ill. 2001)

("The particularity requirement of Rule 9(b) means that a plaintiff may not 'lump' multiple

defendants together in a fraud claim; he must identify the nature of defendant's participation in

the alleged fraud."); Balabanos v. North Am. Inv. Group, Ltd., 708 F. Supp. 1488, 1493 (N.D.

Ill. 1988) (in multiple-defendant cases, "the complaint should inform each defendant of the

specific fraudulent acts that constitute the basis of the action against the particular defendant").

**B.     Counts I-VIII, XI: Fraud Counts**

Defendant Alaron argues that each count alleging fraud must be dismissed because

plaintiffs have failed to satisfy the heightened pleading requirement of Rule 9(b).  In support of

its position, defendant Alaron argues that plaintiffs' complaint violates Rule 9(b) because it: (1)

generally alleges that a series of meetings occurred, but fails to specify when the meeting

happened, who was there, and what was said; (2) generally alleges that MDF sponsored events

for investors, but fails to specify which defendants and which plaintiffs attended a particular

meeting and when it happened; and (3) makes general assertions of defendants' collective

knowledge, but fails to allege how and when specific defendants gained that knowledge.

Plaintiffs respond that in a multiple-defendant scheme, the court must relax the Rule 9(b)

standard when the plaintiff lacks access to all the facts necessary to detail his claim, citing

Hagstrom v. Breutman, MEB Investments, Ltd., 572 F. Supp. 692, 697 (N.D. Ill. 1983) (when

"transactions are numerous and take place over an extended period of time, less specificity is

required").  The court disagrees with plaintiffs and finds that they have not pled their case with

sufficient specificity.

Plaintiffs' complaint fails to satisfy Rule 9(b) as to either the "where" or "when" elements. To satisfy the "where" element, plaintiffs allege only that defendant Tarafa "regularly travelled to Guatemala and other Latin American countries" for meetings with plaintiffs, Giron, and MDF, and that defendants held meetings at their offices in Miami, Florida. Plaintiffs' response to defendant Alaron's motion to dismiss argues that the complaint satisfies "the when and where" by alleging meetings "in Latin American [sic] and at Alaron's Miami offices." Although plaintiffs allege that meetings took place at defendant Alaron's Miami offices, they fail to identify any specific locations in Guatemala or other (unspecified) Latin American countries.

Neither does the complaint satisfy Rule 9(b)'s "when" element. The complaint alleges that a number of meetings occurred between defendants and Giron and that defendant Tarafa attended meetings with plaintiffs, communicated with Giron and MDF through telephone, e-mail, "or other instrumentalities of interstate commerce," and solicited investors to open accounts with MDF and defendant Alaron. The complaint fails to allege, however, even one specific date on which any of these events occurred, or when defendants otherwise made fraudulent statements. In fact, the complaint contains only two references to dates: first, to allege that the scheme began "in or about January 2005 and continu[ed] until in or about August 2008," and second, to allege that defendants met with Giron "[b]eginning in or about June 2004." Despite plaintiffs' argument to the contrary, alleging that meetings occurred in Latin America and defendant Alaron's Miami offices, without specifying *when* those meetings occurred, does not satisfy the "when" element.

Plaintiffs argue that "because the plaintiff may not have access to all the facts necessary to detail his claim," Rule 9(b) requires less detail when fraud is alleged against a third party. But

this is not a situation in which the plaintiff does not have access to sufficient facts to provide more detail in his complaint. The complaint alleges that plaintiffs attended the meetings during which the alleged fraudulent misrepresentations took place, or that defendants' representations at the meetings "were communicated" to several of plaintiffs "through those Plaintiffs who attended the meetings." By the terms of their own complaint, therefore, plaintiffs have sufficient access to facts necessary to satisfy Rule 9(b)'s heightened pleading requirement. Moreover, as plaintiffs acknowledge in their response to defendant Alaron's motion to dismiss, they "spent 14 months investigating the matter and collecting documents, testimony, and sworn affidavits from participants." Through that process, plaintiffs must have gathered sufficient details as to where and when the alleged fraud occurred to be able to satisfy Rule 9(b). Defendant Alaron's motion to dismiss Counts I-VIII and XI for failure to satisfy Rule 9(b) is granted without prejudice, and with leave to file a second amended complaint.

## C.     Count IX: Breach of Fiduciary Duty

Plaintiffs' complaint alleges a pendent state-law claim for breach of fiduciary duty, claiming that defendant Alaron breached the fiduciary duty owed to plaintiffs by virtue of its position as plaintiffs' commodity brokerage firm. In moving to dismiss this count, defendant Alaron does not argue that plaintiffs have failed to allege the elements of a fiduciary relationship[6]; instead, it contends that "[t]he law is well-settled that a commodity brokerage firm owes no fiduciary duty to a [sic] customers, like the Plaintiffs, who maintain non-discretionary

---

[6] Under Illinois law, a fiduciary relationship is established when "a special confidence is reposed in one who, by reason of such confidence, must act in good faith and with due regard to the interests of the person reposing such confidence." <u>Doe v. Brouillette</u>, 906 N.E.2d 105, 121-22 (Ill. App. Ct. 2009) (internal quotations and citations omitted).

trading accounts." But plaintiffs' complaint alleges that the trading accounts were discretionary, not non-discretionary. Taking the complaint's allegations as true, MDF and Giron were agents of defendant Alaron, and because MDF and Giron traded on a discretionary basis, plaintiffs had a fiduciary relationship with defendants. The dispute over whether the accounts were discretionary or non-discretionary is a question more appropriately addressed in a motion for summary judgment or at trial. The court therefore denies defendant Alaron's motion to dismiss Count IV.

**D.      Count X: Negligent Supervision**

Defendant Alaron argues that because plaintiffs make only a "wholly conclusory" allegation that the three individual defendants were trading in plaintiffs' accounts, and that defendant Alaron did not properly supervise them, the court must dismiss plaintiffs' pendent claim for negligent supervision.[7] Plaintiffs contend that defendant Alaron failed in its duty to establish, maintain, and enforce a system of supervision over their branch offices and employees, despite its knowledge that plaintiffs would be subjected to an unreasonable risk of harm by allowing defendants Alaron LA, Alvarez, Ortega, and Tarafa to manage their accounts.

Under Illinois law, a claim for negligent supervision must allege: (1) the employer had a duty to train and/or supervise its employees; (2) the employer negligently trained and/or supervised an employee; and (3) the employer's negligence proximately caused the plaintiff's injuries. Van Horne v. Muller, 691 N.E.2d 74, 79 (Ill. App. Ct. 1998), rev'd in part on other

---

[7] In support of that position, defendant Alaron cites Dowell v. J.W. Fairman, 21 F. Supp. 2d 828 (N.D. Ill. 2009), for the proposition that a bare allegation of failure to supervise is insufficient to state a claim even under Federal Rule of Civil Procedure 8. That case, however, is inapposite; it addresses the non-liability of a correctional training supervisor for the acts of prison guards' liability for an agent under 42 U.S.C. § 1983.

grounds, 705 N.E.2d 898 (Ill. 1999). For an employer to be liable for negligent supervision, "it must be established that the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, having this knowledge, failed to supervise the employee adequately, or take other action to prevent the harm." Doe v. Brouillette, 906 N.E.2d 105, 115-16 (Ill. App. Ct. 2009) (internal quotations and citations omitted).

Because the complaint alleges all of these elements, plaintiffs have stated a claim for negligent supervision under Illinois law. The complaint alleges that: (1) defendant Alaron owed a duty of supervision; (2) defendant Alaron breached that duty by failing to "establish, maintain and enforce a system of supervision over" defendants Alaron LA, Alvarez, Ortega, and Tarafa; and (3) defendant Alaron's failure to supervise proximately and directly caused plaintiffs' injuries. Further, the complaint alleges that "Alaron knew or had reason to know that Plaintiffs would be subjected to an unreasonable risk of harm by allowing [defendants] Alaron LA, Alvarez, Ortega, and Tarafa to manage plaintiffs['] accounts," and that individual defendants "were unfit and untrustworthy to manage Plaintiffs' accounts." Plaintiffs have thus sufficiently stated a claim for negligent supervision, and the court denies defendant Alaron's motion to dismiss Count X.

**E.      Count XII: Unjust Enrichment**

Finally, defendant Alaron argues that plaintiffs' claim for unjust enrichment should be dismissed because the complaint "lacks any element of a cause of action for unjust enrichment." To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the defendant voluntarily accepted a benefit that would be inequitable for the defendant to retain

without compensating the plaintiff.  <u>Industrial Hard Chrome, Ltd. v. Hetran, Inc.</u>, 90 F. Supp. 2d 952, 957 (N.D. Ill. 2000); <u>Skinner v. Shirley of Hollywood</u>, 723 F. Supp. 50, 55-56 (N.D. Ill. 1989).  Plaintiffs' complaint alleges that defendants voluntarily accepted a benefit: "Plaintiffs conferred a benefit on Defendants by investing in excess of $11,000,000 in accounts with Defendant."[8]  The complaint further alleges that defendants "benefitted from the commissions and fees charged to Plaintiffs' accounts."  Next, the complaint alleges that it would be inequitable for defendants to retain these benefits without compensating plaintiffs: "it would be unjust for Defendants to retain the benefits conferred upon them by Plaintiffs, and Defendants' retention of such benefits would violate fundamental principles of justice, equity, and good conscience."  Because plaintiffs have therefore alleged each of the requisite elements, defendant Alaron's motion to dismiss the unjust enrichment count is denied.

## II.     Defendant Alvarez's Additional Arguments

In addition to joining defendant Alaron's motion to dismiss, defendant Alvarez (a former branch manager of defendant Alaron LA), acting <u>pro se</u>, filed his own reply memorandum, asserting that the complaint should be dismissed against him in its entirety "because in each Count, Plaintiffs fail to specify that such Counts are against, specifically, this Defendant." The complaint is not deficient in the specificity of its allegations, either under Rule 9(b)'s heightened pleading requirements for fraud (as to Counts I-VIII and XI) or under Rule 8's standards (as to

---

[8] Defendant Alaron interprets this statement to mean plaintiffs are alleging that the value of the benefit conferred is $11,000,000.  Interpreting the complaint in the light most favorable to plaintiffs, however, it does not have that meaning.  Rather, plaintiffs are simply noting that "by investing" their money with defendants, they provided defendants with a substantial amount of business and payments in the form of commissions and fees, and thus conferred a benefit on them.

Counts IX, X, and XII).  <u>See</u> Part I <u>supra</u>.  Contrary to defendant Alvarez's assertion that, for example, the "conclusory statement that a fiduciary relationship existed between the Plaintiffs and this Defendant is . . . insufficient to establish a fiduciary relationship," plaintiffs' complaint provides enough factual details to state a claim.

Further, defendant Alvarez argues that, for additional reasons, Counts I-III, VII, X, and XII should be dismissed as to him.  The court denies his motion as to Count XII, and grants his motion as to Count I-III, VII, and X; Counts I-II and VII are dismissed without prejudice, and Counts III and X are dismissed with prejudice.

**A.      Counts I-III, VII: CEA and Common Law Fraud**

 Defendant Alvarez contends separately that he is not subject to the claims made under the CEA in Counts I (CEA fraud), II (CEA options fraud), and III (principal liability under the CEA), and that Count VII (common law fraud) must be dismissed because the CEA, Illinois, and Florida statutes have abrogated that cause of action.  Because, as discussed above, plaintiffs' fraud-based allegations fail to meet Rule 9(b)'s heightened pleading standards, they are dismissed without prejudice.  <u>See</u> Part I <u>supra</u>.

Moreover, defendant Alvarez presents an additional reason why Count III does not state a claim against him.  The CEA provision upon which Count III is based establishes individual or corporate liability for "[t]he act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office . . . ."  7 U.S.C. § 2(a)(1)(B).  This provision "enacts a variant of the common law principle of respondeat superior," which "makes an employer strictly liable . . . for torts committed by his employees in the furtherance of his business."  <u>Rosenthal & Co. v.</u>

Commodity Futures Trading Comm'n, 802 F.2d 963, 965 (7th Cir. 1986). Defendant Alvarez is not alleged to have been an employer; he was an employee of defendant Alaron LA, and thus cannot be held liable under this provision. His motion to dismiss is granted with prejudice as to Count III.

**B.      Count X: Negligent Supervision**

Next, defendant Alvarez asks the court to dismiss Count X as to him, arguing that the allegations in this count are directed against defendant Alaron only. He is correct that the proper target of a negligent supervision claim is the employer, not the employees who were allegedly negligently supervised. See Doe v. Brouillette, 906 N.E.2d at 115-16 (discussing elements of negligent supervision). Therefore, the court dismisses with prejudice Count X as to defendant Alvarez.

**C.      Count XII: Unjust Enrichment**

Finally, defendant Alvarez asserts that because the complaint does not allege "how the losses in the Plaintiffs' futures accounts (as opposed to the net income derived from the trading activity) conferred a benefit on this Defendant[,]" the court must dismiss plaintiffs' claim for unjust enrichment as to him. As discussed supra in Part I.E, plaintiffs do not rest their claim for unjust enrichment on the losses in their futures accounts. Defendant Alvarez's motion to dismiss is thus denied as to Count XI.

**III.     Defendant Ortega's Motion to Dismiss**

Defendant Ortega has also moved to dismiss the complaint, arguing that the court lacks personal jurisdiction over him and that venue is improper. Because the court finds that it has personal jurisdiction over defendant Ortega, and that venue is proper, his motion is denied.

15

### A. Personal Jurisdiction

#### 1. Legal Standard for Rule 12(b)(2) Motion

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002). In evaluating a motion to dismiss for lack of personal jurisdiction, "the allegations in the complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in [the plaintiff's] favor." Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987). If the defendant submits affidavits or other evidence in opposition, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 783 (7th Cir. 2003); see also RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997) (court accepts as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff).

#### 2. Discussion

Defendant Ortega argues that the complaint does not establish personal jurisdiction over him under the CEA, 7 U.S.C. § 25(c).[9] To exert personal jurisdiction over a defendant in a federal question case, the court must conduct a two-part inquiry and find, (1) that haling the defendant into court accords with the due process clause of the Fifth Amendment, and (2) that it

---

[9] Until 1992, the CEA did not provide for nationwide service of process. See Futures Trading Practices Act of 1992 § 211, Pub. L. No. 102-546 (1992) (amending the CEA to include nationwide service of process); Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 105-06 (1987) (determining that the CEA does not contain an "implied provision for nationwide service of process in a private cause of action").

has the power to serve the defendant.  United States v. Martinez de Ortiz, 910 F.2d 376, 381-82 (7th Cir. 1990).

As to the first step of the court's inquiry, in federal question cases, "due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state."  Id. at 382, citing Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671 (7th Cir. 1987), cert. denied, 485 U.S. 1007 (1988) ("A federal court in a federal question case is not implementing any state's policy; it exercises the power of the United States.").  Defendant Ortega's contacts with the United States are unquestionably sufficient to support this court's exercise of jurisdiction over him.  See Merrill Lynch Business Financial Servs., Inc. v. Marais, D.D.S., 1995 WL 608573, at *4 (N.D. Ill. Oct. 12, 1995) ("most federal question cases that raise the issue of personal jurisdiction proceed directly to the amenability of service inquiry since the 'minimum contacts' test is easily satisfied and not often contested").

The remaining issue is amenability of service.  Federal Rule of Civil Procedure 4(k)(1)(D) authorizes service of process "when authorized by a statute of the United States."  See Waeltz v. Delta Pilots Retirement Plan, 301 F.3d 804, 807 n.3 (7th Cir. 2002) ("Where, as here, the federal statute creating the cause of action prescribes its own rules for service of process, however, the Federal Rules provide that service made according to the statute is effective to establish personal jurisdiction over the defendant, regardless of whether a court of the state encompassing the federal district court exercise personal jurisdiction over the defendant.").  The CEA, the statute under which plaintiffs have brought all of their federal claims, authorizes nationwide service of process in a private action against "any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets,

counsels, induces, or procures the commission of a violation of this chapter . . . " resulting from one of four enumerated transactions.[10]  7 U.S.C. § 25(a), (c).

Defendant concedes in his motion to dismiss that plaintiffs' claims fall within these types of transactions, noting that: "[t]he Amended Complaint essentially alleges that the Plaintiffs were defrauded into maintaining accounts with Alaron for the trading of futures contracts and options on futures contracts with Alaron.  It thus appears that Plaintiffs' claims under the Act fall within the purview of Section 25(c)."  (Citation omitted).  Because nationwide service of process is thus explicitly statutorily authorized for plaintiffs' CEA claims, the court may consider defendant Ortega's nationwide contacts in determining whether he is amenable to service.  The court finds that defendant Ortega is amenable to service in the United States, and therefore denies his motion to dismiss for lack of personal jurisdiction.

**B.     Venue**

**1.       Legal Standard for Rule 12(b)(3) Motion**

In ruling on a Rule 12(b)(3) motion to dismiss for lack of venue, the court takes all allegations in the complaint as true, draws any reasonable inferences from those facts in the plaintiff's favor, and may examine facts outside the complaint.  <u>Nagel v. ADM Investor Servs., Inc.</u>, 995 F. Supp. 837, 843 (N.D. Ill. 1998).

---

[10]  The four transactions are: (1) the plaintiff bought futures from or sold futures to the defendant, where the defendant's violation of the CEA constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract; (2) the plaintiff received trading advice from the defendant for a fee; (3) the plaintiff bought or sold a futures contract through the defendant; and (4) the plaintiff bought or sold an option or leverage contract or commodity pool interest from or through defendant.  7 U.S.C. § 25(a)(1)(A)-(D); <u>In re Soybean Futures Litigation</u>, 892 F. Supp. 1025, 1041 (N.D. Ill. 1995).

## 2. Discussion

Plaintiffs' complaint states that venue is proper because a substantial part of the events giving rise to the claim occurred in this district. 28 U.S.C. § 1391(b)(2). Defendant Ortega asserts that, pursuant to Federal Rule of Civil Procedure 12(b)(3), venue is improper, but provides virtually no argument in support of his position.

The CEA, at 7 U.S.C. § 25(c), specifies that a private action against a person identified in subsection (a) may be brought in any federal judicial district where that person is found, resides, or transacts business, or where any act or transaction constituting the violation occurs. Because the transactions at issue in the instant case occurred in this district, venue is proper under the CEA.

Moreover, a valid forum-selection clause provides for venue in this district. The parties' relationship is governed by the Alaron Futures and Options Customer Account Agreement. That contract contains a forum-selection clause providing for litigation in Chicago: "any controversy between FCM [defendant Alaron] and customer [plaintiffs] arising out of this agreement, regardless of the manner of resolution, shall be arbitrated, litigated (tried in a court of law) or otherwise resolved by a tribunal located in Chicago, Illinois . . . ." A forum-selection clause is prima facie valid and should not be set aside unless the party challenging its enforcement can show it is "unreasonable under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). The Supreme Court has explained that a forum-selection clause is unreasonable only if: (1) it is fraudulently induced, Carnival Cruise Lines v. Shute, 499 U.S. 585, 591 (1991); (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," Bremen, 407

U.S. at 18; or (3) enforcing the forum-selection clause would contravene a strong public policy of the forum in which the lawsuit is brought.  Id. at 15.  See also AAR Int'l Inc. v. Nimelias Enterprises, S.A., 250 F.3d 510, 525 (7th Cir. 2001) (reciting these three circumstances in which a forum-selection clause is unenforceable).

 None of these situations is present in the instant case, nor does defendant Ortega so argue.  Although a basis of plaintiffs' factual allegations is that defendants misled them into investing, they nowhere argue that the forum-selection clause itself was fraudulently induced.  "Even if [the contract as a whole] were procured by fraud, the venue provision would be valid by analogy to the arbitrability of disputes arising out of contracts procured by fraud when there is no argument that the arbitration provision itself was procured by fraud."  Stephan v. Goldinger, 325 F.3d 874 (7th Cir. 2003), cert. denied, 540 U.S. 876 (2003).  Therefore, because a valid forum-selection clause provides for venue in Chicago, defendant Ortega cannot plausibly argue that venue is improper.

## CONCLUSION

For the reasons discussed above, the court grants without prejudice defendant Alaron's motion to dismiss, joined by pro se defendants Alvarez, Ortega, and Tarafa, as to Counts I-VIII and XI, and denies the motion as to Counts IX, X, and XII, except that the court grants with prejudice the motion to dismiss as to defendant Alvarez, as to Counts III and X.  The court denies defendant Ortega's motion to dismiss.  Plaintiffs are granted leave to file a second amended complaint consistent with this opinion on or before November 30, 2010.  Defendants' responsive

pleadings shall be filed on or before December 28, 2010. The November 18, 2010, status

hearing is continued to January 5, 2010, at 9:00 a.m.

**ENTER:**        **November 2, 2010**

**Robert W. Gettleman**
**United States District Judge**