IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAULINA GUIROLA DE DAVID, CORPORACION DE FIANZAS, CONFIANZA S.A., CARLO MAURO-RHODIO GUZMAN, JESUS ALBERTO QUIROA MONTEPEQUE ASESORES REGIONALES, S.A., DE C.V., CORPORACION DE INVERSIONES EN OPCIONES Y FUTUROS, S.A., ESBA S.A., JOSE MIGUEL GAITAN ALVAREZ, RICARDO RAMON MAZARIEGOS CATELLANOS AND MARIA VIRGINIA GAITAN DE MAZARIEGOS, JULIO ROBERTO PINEDA AVILA, FRANCISCO JAVIER PAZ PINEDA, JUAN FERNANDO PEREZ MARROQUIN, DIDIER PATRICK WURSTER, ALFREDO PRADANOS VALDIZAN, ALBA MARIA MARLENNE MEANY VALERIO DE HAGE AND NORMA LISSETTE HERNANDEZ SANCHEZ, SAMUEL ANTONIO CHARUCO SAGASTUME, CORPORACION INTEGRAL DE INVERSIONES, S.A., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 10 CV 3502<br><br>Judge Robert W. Gettleman |
| Plaintiffs,<br>v.<br>ALARON TRADING CORPORATION d/b/a ALARON LATIN AMERICA, ALBERTO ALVAREZ, JOSE ("PEPE") ORTEGA, ALBERTO TARAFA, yet undetermined principals and yet undetermined persons,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, twenty foreign corporations and individuals, have filed a twelve-count second amended complaint against defendants Alaron Trading Corporation ("Alaron") and its d/b/a Alaron Latin America ("Alaron LA"), along with three of Alaron LA's managers and employees, Alberto Alvarez, Jose "Pepe" Ortega, and Alberto Tarafa, alleging four counts under the

Commodity Exchange Act ("CEA")[1] and eight state law claims.[2] Defendant Alaron, joined by pro se defendant Tarafa (who has also filed a supplemental letter in support of the motion), has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Jose "Pepe" Ortega has moved to dismiss all claims against him in the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), 8(d)(1), 20(a)(1), and 21. Defendant Alberto Alvarez has moved to dismiss with prejudice all claims against him in the second amended complaint pursuant to Fed. R. Civ. P. 8(d), 9(b), and 12(b)(6). For the following reasons, all motions to dismiss are denied, except for Ortega's motion to dismiss as to Counts III and X, from which he is dismissed with prejudice.

**BACKGROUND**[3]

Plaintiffs are foreign individuals and corporations who maintained accounts with defendant Alaron, a Chicago-based futures commissions merchant ("FCM"). Defendant Alaron LA, is Alaron's d/b/a and Miami branch office. The individual defendants, all Florida citizens and residents, were employees and managers of Alaron LA: Alberto Alvarez was its branch manager; Jose "Pepe" Ortega was responsible for accounting and finance; and Alberto Tarafa was the Latin American sales representative.

---

[1] Commodity Exchange Act Fraud, 7 U.S.C. § 6b (Count I); Commodity Exchange Act Options Fraud, 7 U.S.C. § 6c(b) (Count II); Principal Liability for Counts I and II, 7 U.S.C. § 2(a)(1)(B) (Count III); and Aiding and Abetting Violations of the Commodity Exchange Act, 7 U.S.C. § 23(a)(1)(A)-(C) (Count IV).

[2] Violation of Illinois Consumer Fraud and Deceptive Business Practice Act, 815 Ill. Comp. Stat. 505/1 et seq. (Count V); Violation of Florida Securities and Investor Protection Act, F.S. 517.011 et seq. (Count VI); Common Law Fraud (Count VII); Conspiracy to Defraud (Count VIII); Breach of Fiduciary Duty (Count IX); Negligent Supervision (Count X); Fraudulent Concealment (Count XI); and Unjust Enrichment (Count XII).

[3] For purposes of a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 847 (7th Cir. 2008).

Plaintiffs allege that from January 2005 through August 2008, defendants operated and fraudulently concealed from plaintiffs a futures and options Ponzi scheme, along with non-parties Mercados de Futuros ("MDF")—Alaron's Guatemala-based foreign introducing broker ("FIB")—and MDF's CEO and head trader, Raul Alfonso Girón Galves ("Girón"). Plaintiffs allege that this scheme was intended to, and in fact did, defraud them of at least $11 million. The details of the alleged Ponzi scheme are set forth in some detail in the court's November 2, 2010, Memorandum Opinion and Order granting in part and denying in part defendants' motions to dismiss the first amended complaint, and therefore will not be reiterated here. DeDavid v. Alaron Trading Corp., No. 10 CV 3502, 2010 U.S. Dist. LEXIS 117029 (N.D. Ill. Nov. 2, 2010).

## DISCUSSION

**I.  Legal Standards**

In considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 847 (7th Cir. 2008). The purpose of such a motion is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The complaint must describe the claim in sufficient detail to give a defendant fair notice of what the claim is and the grounds on which it rests. The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The plaintiff must give enough details about the subject matter of the case to present a story that holds together. The court then asks "itself could these things have happened, not did they happen." Swanson v. Citibank N.A., 614 F.3d 400, 404 (7th Cir. 2010).

3

Additionally, because plaintiffs asserts various fraud-related claims, Counts I-VIII and XI are subject to the heightened pleading standards of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As used in Rule 9(b), "circumstances" means the "who, what, where, when, and how" of the alleged fraud. Uni*quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) ("the plaintiff [must] state the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff") (internal quotation omitted). In a multiple-defendant case, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Vicom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted); see also Zic v. Italian Gov't Travel Office, 149 F. Supp. 2d 473, 477 (N.D. Ill. 2001) ("The particularity requirement of Rule 9(b) means that a plaintiff may not 'lump' multiple defendants together in a fraud claim; he must identify the nature of defendant's participation in the alleged fraud."); Balabanos v. North Am. Inv. Group, Ltd., 708 F.Supp. 1488, 1493 (N.D. Ill. 1988) (in multiple-defendant cases, "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant").

## II.  Defendant Alaron's Motion to Dismiss

The court previously found that the fraud-related claims (Counts I-VIII and XI) in the first amended complaint failed to meet Rule 9(b)'s requirement that allegations of fraud be pled with specificity. Plaintiff has remedied the deficiencies of the previous complaint by adding the following allegations: each plaintiff's Alaron account number(s), the approximate date the accounts were opened, with whom the plaintiffs spoke to open and maintain their accounts, and

4

the locations and approximate dates of these conversations. The second amended complaint also includes new allegations that, "as early as August 2003," Alvarez and Ortega met with MDF officials, learned of the proposed principal and trading guarantees, and nonetheless arranged for MDF to be Alaron's foreign introducing broker ("FIB") and to espouse those false guarantees.

Alaron's motion to dismiss the second amended complaint, which pro se defendant Tarafa has joined, presents a number of arguments that plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading requirement as to its allegations of fraud: (1) plaintiffs have pled insufficient facts to determine whether jurisdiction exists (thus mandating dismissal of the entire complaint); (2) plaintiffs have failed to allege that an agency relationship existed between MDF/Girón and Alaron (also mandating dismaissal of all counts); (3) plaintiffs have failed to allege a conspiracy to defraud (Count VIII); (4) most of the allegations pertaining to plaintiffs' fraud claims (Counts I, II, V, VI, and VII) do not constitute actionable misrepresentation or fraud; and (5) plaintiffs have failed to allege excessive trading and excessive commission rate claims. Alaron also argues that Counts IX, X, and XII should be dismissed because, for the following reasons, plaintiffs have failed to satisfy Rule 8(a): (1) plaintiffs have not alleged that Alaron owed them a fiduciary duty (Count IX); (2) Alaron owed no duty to plaintiffs that could support a claim for negligent supervision (Count X); and (3) plaintiffs have failed to state a claim for unjust enrichment (Count XII). For the following reasons, Alaron's motion to dismiss is denied.

**Jurisdiction**

First, Alaron unconvincingly argues that plaintiffs have not pled sufficient facts to support diversity jurisdiction under 28 U.S.C. §1332. Alaron claims that plaintiffs' allegation that "the amount in controversy as to each Plaintiff exceeds $75,000.00" is insufficient because it does not state that this amount is exclusive of interest and costs. Plaintiffs have also, however, alleged an aggregate loss of $11 million. "'[T]he sum claimed by [the proponent of federal jurisdiction] controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" Meridian Sec., Ins. Co. v. Sadowski, 441 F.3d 536, 541 (7th Cir. 2006), quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). Plaintiffs' allegations of amount-in-controversy appear to have been made in good faith, and defendants do not claim otherwise. Relatedly, despite Alaron's claims to the contrary, plaintiffs have not failed to allege individualized damages, because they have alleged an amount exceeding $75,000 as to each plaintiff.

Second, Alaron incorrectly contends that plaintiffs have not pled sufficient facts to support federal question jurisdiction under 28 U.S.C. § 1331 because the allegations do not allow for a determination of whether plaintiffs' CEA claims are barred by the two-year statute of limitations, 7 U.S.C. § 18(a). Motions to dismiss on statute of limitations grounds are rarely granted. Reiser v.Residential Funding Corp., 380 F.3d 1027 (7th Cir. 2004) (citation omitted) ("All we have to go on is the complaint, and because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)."). For a statute of limitations defense to be decided on a motion to dismiss, the bar must be facially obvious—but Alaron cannot establish that, on its face, the second amended complaint shows the CEA claims are

6

barred. The two-year statute of limitations for CEA claims began to run when plaintiffs, "in the exercise of due diligence, [have] actual or constructive knowledge of the conduct in question." Dyer v. Merrill Lynch, Pierce, Fenner & Smith Inc., 928 F.2d 238, 240 (7th Cir. 1991) (citations omitted). Reading the complaint in the light most favorable to plaintiffs, they have alleged that their first chance to discover defendants' wrongdoing was in August 2008, when the media reported that the Guatemalan government had shut down MDF and was investigating its business practices. Further, even if, as Alaron argues, plaintiffs suffered losses that ordinarily would have made their CEA claims discoverable at an earlier time, plaintiffs have also alleged fraudulent concealment (Count XI), which tolls the limitations period during the time that defendants concealed their wrongdoing from plaintiffs.

**Agency**

Alaron next claims that plaintiffs cannot hold Alaron, as an FCM, liable for MDF's actions as an FIB because they have failed to adequately plead that Alaron was MDF's agent. Plaintiffs do allege that MDF was Alaron's FIB, but Alaron argues that this is not sufficient because an agency relationship does not arise as a matter of law between an FCM and an FIB. According to Alaron, plaintiffs must also allege that MDF is "registered as such" or provide facts demonstrating that an agency relationship existed. As Alaron concedes, although a clearing firm is not liable for the actions of its introducing broker, courts will impose liability when the clearing firm goes beyond ministerial or routine clearing functions and directs or contrives in the fraudulent trades. See, e.g., Daniel v. Bear Sterns & Co., 196 F. Supp. 2d 343 (S.D.N.Y. 2002) ("[W]here a clearing firm moves beyond performing mere ministerial or routine clearing functions and becomes actively and directly involved in the introducing broker's actions, it may

7

expose itself to liability with respect to the introducing broker's misdeeds."); In re Blech Secs. Litig., 961 F.Supp. 569, 584 (S.D.N.Y. 1997). Alaron nonetheless argues that plaintiffs have failed to allege this with sufficient specificity under Rule 9(b). The court disagrees. Plaintiffs have alleged, in some detail, that Alaron shed its role as a mere clearing firm and chose to actively participate in MDF's fraudulent scheme. The court also accordingly rejects Alaron's arguments against plaintiffs' claims for aiding and abetting liability (Count IV), and principal liability (Count III), because Alaron bases these arguments on its claim that plaintiffs fail to allege agency. See, e.g., Cannizzaro v. Bache, Halsey, Stuart, Shields, Inc., 81 F.R.D. 719, 721 (S.D.N.Y. 1979) (denying motion to dismiss aiding and abetting claim against clearing firm where facts might show that clearing firm performed more than mere mechanical functions for introducing broker).

**Fraud: Count VII**

Alaron argues that plaintiffs' allegations of fraudulent statements are either conclusory or mere puffery. This argument is entirely lacking in merit. Plaintiffs' new allegations, in paragraphs one through seventeen of the second amended complaint, include specific statements of purported fact (for example, guaranteed returns on investments), rather than statements of mere expectations of probabilities. Alaron's motion to dismiss Count VII is denied.

**Conspiracy to Defraud: Count VIII**

Alaron contends that the existence of a clearing relationship does not itself establish a conspiracy, and plaintiffs have failed to allege additional facts. Plaintiffs correctly respond that the second amended complaint alleges in detail that Alaron's Miami office participated actively

in planning, assisting, and encouraging the scheme. Alaron's motion to dismiss Count VIII is denied.

**Breach of Fiduciary Duty: Count IX**

Alaron argues that plaintiffs have not sufficiently pled that a fiduciary relationship existed between themselves and Alaron because Alaron did nothing more than act in a clearing capacity for the accounts plaintiffs maintained with MDF. Contrary to Alaron's assertions, however, plaintiffs' allegations include sufficient descriptions of Alaron's involvement in the scheme. Alaron's motion to dismiss Count IX is denied.

**Negligent Supervision: Count X**

Alaron argues that Count X is insufficiently pled because plaintiffs have not alleged facts to show that Alaron owed them any duty ("i.e., an agency relationship") that could support a claim for negligent supervision. Because, as discussed above, plaintiffs have sufficiently alleged that Alaron exceeded the ministerial duties of an FCM and thus has a duty to plaintiffs, Count X is properly pled.

**Fraudulent Concealment: Count XI**

Alaron claims that plaintiffs have not properly pled fraudulent concealment because plaintiffs have pled only "a concealment of losses as part of the perpetration of the alleged fraud and not concealment of the cause of action." This is incorrect. Plaintiffs have alleged various facts in support of their claim that defendants made efforts to hide their participation in the scheme. Alaron's motion to dismiss Count XI is denied.

**Unjust Enrichment: Count XII**

Alaron renews its argument that plaintiffs have failed to state a claim for unjust enrichment, which under Illinois law requires that the defendant voluntarily accepted a benefit that would be inequitable for the defendant to retain without compensating the plaintiff. Industrial Hard Chrome, Ltd. v. Hetran, Inc., 90 F. Supp. 2d 952, 957 (N.D. Ill. 2000); Skinner v. Shirley of Hollywood, 723 F. Supp. 50, 55-56 (N.D. Ill. 1989). As the court previously explained, plaintiffs have adequately stated a claim by alleging that the commissions and fees defendants received as a result of plaintiffs' business constituted a benefit, which it would be inequitable for defendants to retain without compensating plaintiffs because, for example, defendants failed to provide the account services for which plaintiffs paid the fees.

Alaron asks the court to reconsider this ruling because Alaron incorrectly believes the court "misapprehended" its argument. The court explicitly considered Alaron's position and rejected it, explaining that to accept defendants' argument would demand that the court improperly draw reasonable inferences in defendants', rather than plaintiffs', favor. See, e.g., Bonte v. U.S. Bank, N.A., 624 F.3d 461, 463 (7th Cir. 2010); Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.d 899, 902 (7th Cir. 2004) ("[W]hen acting on the pleadings, courts must indulge the readings and make the assumptions that favor the plaintiff.") (citation omitted). The benefit element is satisfied by the fees and commissions defendants received—not, as Alaron asserts, by the amount plaintiffs invested and lost. For the reasons discussed in the court's previous opinion, plaintiffs have stated a cognizable claim for unjust enrichment, and Alaron's motion to dismiss Count XII is denied.

**Defendant Tarafa's Pro Se Supplement to Alaron's Motion to Dismiss**

In a separate filing, defendant Tarafa states that he cannot be held liable as to the plaintiffs with whom the complaint does not allege he met. This argument ignores the myriad individualized allegations against Tarafa that plaintiffs have alleged in the second ameded complaint, and the allegations establishing his overall role in the scheme. Tarafa's motion to dismiss is denied.

### III.     Defendant Alvarez's Motion to Dismiss

Defendant Alvarez, a former branch manager at Alaron LA, argues that plaintiffs have failed to state a claim against him because the second amended complaint lacks individualized allegations against him. Alvarez, at the time acting pro se, advanced the same argument in his motion to dismiss the first amended complaint: "Plaintiffs fail to specify that such Counts are against, specifically, this Defendant." As the court previously found, the complaint is not deficient in the specificity of its allegations, either under Rule 9(b)'s heightened pleading requirements for fraud (as to Counts I-VIII and XI) or under Rule 8's standards (as to Counts IX, X, and XII). For the reasons stated in its prior opinion, the court again rejects this argument.

Next, Alvarez argues that the court should dismiss the second amended complaint because it is unintelligibly confusing under Fed. R. Civ. P. 8(d). While the second amended complaint may not be a model of clarity and concision, it is not so confusing as to be unintelligible and certainly suffices to put the parties on notice of the claims against them. As Alvarez himself acknowledges, the second amended complaint "clearly attempts to describe twenty or more separate account relationships, each with its own unique set of facts and circumstances surrounding them and the alleged investment losses they sustained."

Finally, Alvarez contends plaintiffs are improperly joined under the permissive joinder standard of Fed. R. Civ. P. 20(a)(1) because the second amended complaint includes "many different claims against many different defendants," which would require separate proof and separate defenses at trial. Joinder is appropriate when plaintiffs both "assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a)(1). This is clearly the case here, where plaintiffs have a conspiracy claim (Count VIII) and allege that defendants defrauded each of them in the same or very similar ways, using the same Ponzi scheme. This is not a case in which each plaintiff's claims will require extensive individual fact finding, and in which each plaintiff will require different witnesses and testimony to support his claims. See Martinez v. Haleas, No. 07 C 6112, 2010 WL 1337555, at *3-4 (N.D. Ill. March 30, 2010).[4]

Alvarez's motion to dismiss is denied.

## IV.     Defendant Ortega's Motion to Dismiss

Ortega requests that the court dismiss him from Counts III and X, and plaintiffs concede that this is appropriate given the court's previous rulings on Alvarez's motions to dismiss these counts. Count III alleges a claim for principal liability under the CEA, 7 U.S.C. § 2(a)(1)(B), which "enacts a variant of the common law principle of respondeat superior." Rosenthal & Co. v. Commodity Futures Trading Comm'n, 802 F.2d 963, 965 (7th Cir. 1986). Count X alleges a claim for negligent supervision, which holds employers liable for the acts of their negligently supervised employees. See Doe v. Brouillette, 906 N.E.2d 105, 115-16 (Ill. App. Ct. 2009.

---

[4] The court may revisit this issue should discovery so indicate.

Because plaintiffs allege that Ortega was an employee, not an employer, these claims do not apply to him.

Plaintiffs nonetheless request the right, after conducting more extensive discovery, to again amend their complaint or to introduce evidence at a hearing demonstrating Ortega's liability under these claims. Ortega argues that "no evidence uncovered during discovery could give rise to any liability against Ortega under Counts III and X." The court agrees with Ortega, and dismisses Ortega from Count X with prejudice.

Ortega also argues that the second amended complaint includes only one specific allegation against him, and that lone allegation undermines rather than supports a theory of Ortega's involvement in the Ponzi scheme. This allegation, in paragraph 30 of the second amended complaint, is as follows:

> In or about August of 2003 Defendants Alvarez and Ortega travelled to Guatemala City and met with officials of MDF, at their Edificio Europlaza offices to plan the business alleged herein to be a Ponzi scheme. During the meetings Defendants Alvarez and Ortega went for drinks with MDF officials including Mr. Mancilla. Mr. Mancilla explained to Defendants Alvarez and Ortega that MDF would be soliciting business by guarantying principal and a pre-agreed upon rate of return on account trading. The Defendant Ortega riled with frustration explaining [sic] to the MDF staff that Alaron could not do business with MDF if it would be guarantying principal and a minimum return on futures trading. . . . Defendants Alvarez and Ortega met with Girón the next day, and although it is unknown what was said in that meeting at the Europlaza offices, the Alaron MDF business went forward and MDF, supported by Alaron, continued to provide false profit guaranties to their investors for investing with Alaron through the services of MDF.

Ortega interprets this allegation to mean that he disapproved of the planned scheme. But if this allegation is read in the context of the entire paragraph—and the entire complaint—and interpreted in the light most favorable to plaintiffs, it clearly does not have that meaning. Rather, the paragraph alleges that Ortega, knowing it was wrong to make such guarantees, nonetheless

13

acquiesced to Alaron's decision to work with MDF. Further, this is not the only allegation against Ortega; plaintiffs also allege that Ortega participated in later meetings for MDF-introduced investors and "either reiterated or acquiesced to" the false guarantees Alaron and MDF were making to those investors. The allegations that Ortega knew about the scheme, agreed to it, and facilitated it are sufficient to allow plaintiffs' claims against him to survive a motion to dismiss. Ortega's motion is denied.

## CONCLUSION

For the foregoing reasons, the court denies defendants Alaron and Tarafa's motion to dismiss, denies defendant Alvarez's motion to dismiss, and denies defendant Ortega's motion to dismiss except as to Counts III and X, which the court dismisses as to Ortega with prejudice. Defendants are directed to answer the second amended complaint, consistent with this opinion, on or before June 3, 2011. This matter is set for a report on status June 9, 2011, at 9:00 a.m.

**ENTER:** **May 10, 2011**

_____
**Robert W. Gettleman**
**United States District Judge**