IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAULINA GUIROLA DE DAVID, | ) | |
| CORPORACION DE FIANZAS, CONFIANZA | ) | |
| S.A., CARLO MAURO-RHODIO GUZMAN, | ) | |
| JESUS ALBERTO QUIROA MONTEPEQUE | ) | |
| ASESORES REGIONALES, S.A., DE C.V., | ) | |
| CORPORACION DE INVERSIONES EN | ) | No.   10 CV 3502 |
| OPCIONES Y FUTUROS, S.A., ESBA S.A., | ) | |
| JOSE MIGUEL GAITAN ALVAREZ, | ) | Judge Robert W. Gettleman |
| RICARDO RAMON MAZARIEGOS | ) | |
| CATELLANOS AND MARIA VIRGINIA | ) | |
| GAITAN DE MAZARIEGOS, JULIO | ) | |
| ROBERTO PINEDA AVILA, FRANCISCO | ) | |
| JAVIER PAZ PINEDA, JUAN FERNANDO | ) | |
| PEREZ MARROQUIN, DIDIER PATRICK | ) | |
| WURSTER, ALFREDO PRADANOS | ) | |
| VALDIZAN, ALBA MARIA MARLENNE | ) | |
| MEANY VALERIO DE HAGE AND NORMA | ) | |
| LISSETTE HERNANDEZ SANCHEZ, and | ) | |
| SAMUEL ANTONIO CHARUCO | ) | |
| SAGASTUME, CORPORACION INTEGRAL | ) | |
| DE INVERSIONES, S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ALARON TRADING CORPORATION d/b/a | ) | |
| ALARON LATIN AMERICA, ALBERTO | ) | |
| ALVAREZ, JOSE ("PEPE") ORTEGA, | ) | |
| ALBERTO TARAFA, and yet undetermined | ) | |
| principals and yet undetermined persons, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Alaron Trading Corporation ("Alaron") has filed a motion (which defendants

Alberto Alvarez, Jose Ortega, and Alberto Tarafa have joined) to disqualify plaintiffs' counsel,

J.B. Grossman.  Although the parties rely exclusively on the Florida Rules of Professional

Conduct, the motion is properly brought under Northern District of Illinois Local Rule 83.50.

This distinction is unimportant, however, because L.R. 83.50 adopts the American Bar

Association Model Rules of Professional Conduct to the extent that the ABA's rules are

consistent with the Rules of Professional Conduct in the state in which the lawyer's principal

office is located—and Florida has adopted the ABA Model Rules (as has Illinois). Aware that

the movant "bears a heavy burden of proving facts required for disqualification,"

Commonwealth Ins. Co. v. Stone Container Corp., 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001)

(internal quotation marks and citation omitted), the court has reviewed a great deal of evidence

in the form of live testimony from de Marcilla, Grossman, and Alvarez, as well as the

depositions, affidavits, and other documents cited in the parties' briefs and presented as exhibits

at the evidentiary hearing. Based on this evidence, the court concludes that Grossman has

violated ABA Model Rule 1.18, making disqualification necessary.

In 2006, George de Marcilla, acting on behalf of his employer Alaron, met with

Grossman.[1] The subject of that meeting was whether Alaron was subject to liability in the

United States because its foreign introducing broker allegedly guaranteed its clients interest and

principal.[2] De Marcilla described Alaron's relationship with MDF and explained his concerns

about Alaron's potential liability. Grossman provided a preliminary assessment of the

jurisdictional issue; according to de Marcilla's May 2009 affidavit—which Grossman and an

associate from his law firm helped de Marcilla to prepare for plaintiffs' use in the instant

---

[1] Grossman recalls a telephone conversation. De Marcilla recalls a telephone call followed by a dinner meeting in Miami. The court finds de Marcilla to have been highly credible, and thus credits his testimony in this regard.

[2] De Marcilla recalls that the problem initially involved only the guarantee of principal. Grossman recalls the problem as involving the guarantee of principal and interest. The differing recollections are immaterial to the resolution of the instant motion.

case—Grossman stated that "the investments were quite likely[] subject to U.S. investment laws." Grossman suggested that Alaron "retain counsel to look into the matter." Interpreting that statement to mean that Alaron should retain Grossman specifically, de Marcilla told Grossman he would recommend Grossman's firm to Alaron and reported the conversation to Alberto Alvarez, a manager and part-owner of Alaron, as well as a defendant in this case. Alvarez declined to hire Grossman, or any other attorney, to determine whether the U.S. courts had jurisdiction over Alaron's activites abroad.

Four years later, plaintiffs—represented by Grossman—filed the instant complaint, bringing claims for fraud under the Commodity Exchange Act as well as a variety of state-law claims (including additional fraud claims, breach of fiduciary duty, and negligent supervision) against Alaron and several of its mangers, including Alvarez—but not de Marcilla. Plaintiffs allege that Alaron was aware that MDF was making fraudulent representations to its clients and prospective clients—including the guarantees of interest and principal—and that they nonetheless worked with MDF to solicit plaintiffs' investments based on those misrepresentations. As part of Grossman's preparation for this lawsuit, he asked de Marcilla (who had retained Grossman for other, only tangentially related, matters) to prepare an affidavit with everything he knew about the scheme. As de Marcilla testified, Grossman assured him that these disclosures would not expose him to liability.[3]

Under ABA Rule 1.18(a), "[a] person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." Alaron

---

[3] Again, the court found de Marcilla to be credible, and thus accepts his recollection of this conversation as accurate.

became Grossman's prospective client when de Marcilla, acting as a representative of Alaron, discussed the possibility of retaining Grossman to determine whether Alaron was subject to liability in the United States for its involvement with MDF and its guarantees. Rule 1.18 further provides that an attorney who, like Grossman, "has had discussions with a prospective client . . . shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter," subject to an exception inapplicable here. ABA Rule 1.18(b)-(c). This is, however, exactly what Grossman has done. From his prospective client Alaron, Grossman learned some of the factual basis for plaintiffs' claims against Alaron, and his attention was drawn to the fact that Alaron was concerned (but not overly so) that its activities might subject it to liability in the U.S.—information that was certainly "significantly harmful" to Alaron, which is now defending itself in an $11 million lawsuit. Grossman then decided to represent plaintiffs in this lawsuit—at the very least, a "substantially related matter"—against his former prospective client. The parties' interests are undoubtedly materially adverse: they are on opposing sides of the same litigation.

Plaintiffs contend that the information Alaron conveyed to Grossman was not "significantly harmful" because MDF's guarantees were made in their promotional materials provided to prospective clients, so any facts Grossman could have received were not confidential. But it is irrelevant whether MDF (and Alaron) publicly made such guarantees. Alaron's "opinions and impressions of even public documents and facts would establish privileged communication and if revealed, in any form or fashion, would constitute significant harm." Zalewski v. Shelroc Homes, LLC, __ F. Supp. 2d __, 1:11-CV-1159, 2012 WL 716294,

4

at *9 (citation omitted) (E.D.N.Y. Mar. 6, 2012). Having learned that Alaron was concerned about its liability, Grossman cannot be expected to have simply ignored that knowledge, only to stumble into prosecuting that case against Alaron a few years later.

The court notes that plaintiffs' second amended complaint alleges (as did the previous versions) that "[p]laintiffs did not discover and in the exercise of reasonable diligence could not have discovered the Defendants' scheme until August 2008 when the MDF offices were finally shut down as the result of media reports that the Guatemalan government was conducting a criminal investigation into MDF's trading activities." While none of the evidence presented to the court directly contradicts that allegation, it is certain that their counsel could have, and did, begin to discover the basis for the complaint back in 2006.

Because motions for disqualification "can be misused as techniques of harassment," they are viewed with "extreme caution." Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982). But even though Grossman professes to have learned nothing harmful to Alaron when de Marcilla consulted him about Alaron's potential liability, the harmful information was that Alaron was concerned about its liability, coupled with the basis for that concern (the guarantees of principal and/or interest). Because that potential representation placed Grossman in a position to unfairly advantage his current clients, Grossman is disqualified from representing plaintiffs against Alaron. The fact that Grossman proceeded to represent de Marcilla in other matters, secured de Marcilla's affidavit for use in this litigation, and assured de Marcilla (at the time his client) that he would not be involved in this suit—coupled with the fact that Alaron has now filed a third-party complaint against de Marcilla—simply adds to the patina of impropriety. As the Seventh Circuit has observed, "[c]lients will not repose confidences in

lawyers whom they distrust and will not trust firms that switch sides . . . nimbly.'"  Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263, 1269 (7th Cir. 1983) (citation omitted); see also Trone v. Smith, 621 F.2d 994, 1000 (9th Cir. 1980) (the duty not to switch sides "is what distinguishes a professional relationship from one involving merely a barter and sale").  The court's duty to preserve the integrity of the legal profession and the adversary system, as well as to avoid even the appearance of impropriety in the instant matter, demand that it exercise its authority to disqualify Grossman as plaintiffs' counsel in this litigation.

For the foregoing reasons, defendant Alaron's motion to disqualify is granted.


**ENTER:**      **April 23, 2012**


_____
**Robert W. Gettleman**
**United States District Judge**